# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 13, 2000

## DAVID PALMER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 95-B-825      J. Randall Wyatt, Jr., Judge**

---

**No. M2000-00371-CCA-R3-PC - Filed January 18, 2001**

---

The petitioner filed a post-conviction petition for relief from his conviction for aggravated child abuse, arguing that: (1) he received ineffective assistance of counsel at trial; (2) his due process rights were violated because he was not present during voir dire; and, (3) he was denied his constitutional right to testify in his own behalf. After the post-conviction court denied his petition, the petitioner appealed to this court. We affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, David Palmer.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Philip H. Wehby, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner, David Palmer, appeals from the post-conviction court's denial of post-conviction relief from his conviction for aggravated child abuse. The petitioner was convicted of one count of aggravated child abuse, a Class A felony, and sentenced to seventeen years imprisonment. Following the denial of his petition for post-conviction relief, the petitioner filed a timely appeal to this court, raising three issues for our review:

      I.       Whether he received effective assistance of counsel;

      II.     Whether he was denied due process of law by not being allowed to be present during the voir dire of the jury; and

III.     Whether he was denied his constitutional right to testify at his trial.

After a thorough review of the record, we affirm the judgment of the post-conviction court.

**FACTS**

On August 29, 1995, the petitioner was found guilty by a jury of one count of aggravated child abuse for burning the hand of his girlfriend's one-year-old daughter. His conviction was affirmed on direct appeal to this court, and our supreme court denied his application for permission to appeal. See State v. David Palmer, No. 01C01-9607-CR-00285, 1997 WL 722789 (Tenn. Crim. App. Nov. 20, 1997), perm. app. denied (Tenn. Sept. 21, 1998). On September 2, 1999, the petitioner filed a *pro se* petition for post-conviction relief. After counsel was appointed, the petitioner filed an amended petition for post-conviction relief on November 19, 1999, alleging, *inter alia*, that his trial counsel were ineffective for failing to discover mental health records that indicated that his mental functioning was below normal; that he was not allowed to be present during voir dire of the jury; and that his trial counsel denied him the right to testify at trial.

At trial, the petitioner was represented by two court-appointed public defenders. Both testified at his post-conviction hearing. Senior trial counsel had been licensed to practice law for three years prior to the petitioner's trial and had been an assistant public defender for two years. She had been counsel in a number of trials and in "several serious felony trials" prior to the petitioner's trial. Junior trial counsel had been licensed for two months, and the first jury trial in which she had participated was that of the petitioner.

Senior trial counsel stated that she met with the petitioner fourteen times prior to trial. She said that at some point in their pretrial dealings with the petitioner, she and junior trial counsel became "concerned that he was slow." However, when they questioned the petitioner, he specifically denied having ever been in special education classes or having had "any sort of assessments or anything done." She stated that she did not attempt to have a mental evaluation of the petitioner performed because she did not believe that she had any concrete grounds upon which to base a request for ex parte funds for testing. She did not recall the petitioner acting "childishly" in her dealings with him. When asked if she and junior trial counsel had thought that the petitioner had trouble understanding them, she responded:

> At the time, I don't know that we were sure whether it was totally an issue of his limitations, whether it was, sometimes we see clients who don't want to understand what we're saying, or a combination of the two, but I think in hindsight he did have trouble understanding some of the things that we were explaining to him. Yes.

After the trial, senior trial counsel learned that mental evaluations of the petitioner, performed when he was hospitalized in mental treatment facilities at the age of fourteen, indicated that he had the mental age of an eight-year-old. In her opinion, this information would have been "incredibly important" to her at trial, because it would have supported the petitioner's claim that he had burned the child's hand accidentally, which was the basis of their defense.

She stated that, prior to trial, she and junior trial counsel listened to the petitioner give his account of how the child had been burned, found it "not believable," and therefore "strongly believed he should not testify in the trial." She said that the petitioner accepted their judgment and decided not to take the stand. Further, the petitioner was present during voir dire of the jury and sat between his two attorneys.

Senior trial counsel testified that she had a note in her file indicating that the petitioner had asked her to contact his mother as a potential witness. She said that, although she had no independent recollection of speaking with the petitioner's mother, she "could not imagine" that she would not have talked to her, because she "always" spoke with family members.

On cross-examination, she stated that she and junior trial counsel had filed numerous motions before the trial court during their representation of the petitioner, and that they had litigated all issues of which she was aware at the time. She said that she had investigated the case prior to trial as thoroughly as she could, and acknowledged that she had raised the issue of her late discovery of the mental evaluation evidence in her motion for a new trial, which was denied. She also acknowledged that she was aware that this court had concluded, on appeal, that the mental evaluation evidence was not material and would not have changed the outcome of the trial. She admitted that there had never been a finding that the petitioner was incompetent.

Junior trial counsel testified that she assisted senior trial counsel in her representation of the petitioner. She said that she "always thought that [the petitioner] was a little slow." She "didn't know if he had trouble understanding what [she and senior trial counsel] were saying, but [that she] always thought it was a trouble of focus," because "[h]e was focusing on things that didn't really matter instead of focusing on what we needed, the important things of the case . . . ." On cross-examination, she acknowledged that neither the petitioner nor anyone in his family ever told either counsel that he had been in any kind of treatment facility or that he had been mentally evaluated, and that they had acted immediately when they first learned of the petitioner's prior treatment history.

Izora Palmer, the petitioner's mother, testified that she had not been contacted by her son's attorneys prior to trial. She said that if they had contacted her, she would have informed them that he had been hospitalized and mentally evaluated when he was a child. In response to questioning by the State and the post-conviction court, however, she disclosed that she had never attempted to contact her son's counsel prior to trial, that she had not visited him when he was in jail, and that she had not attended his preliminary hearing or his trial.

The petitioner testified that he was unable to understand everything his trial counsel said to him because at the time of his trial he was only twenty years old, had just been "locked up," was under a lot of stress, and "didn't know nothing about the law." He admitted that his counsel had asked him if he had ever been mentally evaluated and he told them he had not. He explained that he was afraid to tell them the truth, for fear that the incident which precipitated his hospitalization and testing, his sexual fondling of his younger sister, would be used against him at his trial.

The petitioner stated that when his trial began, the jury was brought into the courtroom and the case began, without anyone questioning the jury members to determine if they might be biased against him. In response to questioning by the post-conviction court, he insisted that his counsel had asked no questions of the jury members in his presence. The petitioner said that four jurors had been "looking at [him] kind of strange," but that when he objected to their presence, senior trial counsel told him that the trial had already started and that it was too late to remove any jurors.

The petitioner said that he told his counsel that he wanted to testify at trial, but they had advised him against it. When asked what his counsel had said, the petitioner answered:

> What I remember, I think she told me that it wouldn't be in my best interest for me to testify, because if I testified they would be able to bring in my past – my past records.
>
> I can't remember exactly what records she was talking about, but I just remember her saying something about some past records. I think it was my probation stuff that I was on, or those records, I think, I'm not for sure.

The petitioner said that, at the time of his trial, he had prior convictions for statutory rape and vandalism, and he had been on probation when the incident occurred. Had he testified, the petitioner said that he would have explained to the jury:

> [T]hat I was–I was, you know, that I did–I did cause the injury, but it was an accident, and that I was going through a lot of emotion and stress and everything I had explained beforehand about what was wrong with me.
>
> And I would have told them that me and Shewana [his girlfriend] was [sic] arguing. And that I just wasn't thinking right when I cut the water on, 'cause she had put her hand on some gel that her mother used on her hair, and I had some water separately in the sinks.
>
> You know, one side is the cold side and the other side is the hot side. And when you turn on the water on [sic] the projects it gets hot real fast. And I had rinsed her hand off, you know.

-4-

And at that time I just wasn't thinking, man, I wasn't focusing right, you know. And that's how her hand got burnt, you know.

On cross-examination, the petitioner admitted that, in addition to the conviction for statutory rape, he also had a juvenile criminal record with a history of assault and battery, aggravated sexual battery, aggravated assault, disorderly conduct, unruly behavior, and being a runaway. The petitioner acknowledged that he had lied to his counsel when he told them that he did not have any kind of mental condition or juvenile history. He affirmed that it had been his choice not to testify, after his counsel advised him that it would not be in his best interest to do so.

At the conclusion of the hearing, the post-conviction court denied the petitioner relief, finding that he had failed to carry his burden of demonstrating ineffective assistance of counsel, that he had been present during voir dire, and that he had been aware of his right to testify, but had declined to do so based on the advice of competent counsel. The court's order states, in pertinent part:

> This Court is of the opinion that both [senior trial counsel] and [junior trial counsel] are experienced and competent criminal defense attorneys who performed within the boundaries required by law in their representation of the petitioner in this case. In the Court's judgment, there has been no showing by petitioner of deficiency in counsels' performance prior to or during the trial. Further, the Court believes that the absence of the hospital records is directly attributable to petitioner's intentional deception of counsel and, as the Criminal Court of Appeals held, that the records were not material to the defense of petitioner, and would not have altered the outcome of the trial.

## ANALYSIS

## STANDARD OF REVIEW

The petitioner's petition for post-conviction relief is governed by the 1995 Post-Conviction Procedure Act, which provides that the petitioner must establish his allegations by "clear and convincing evidence." Tenn. Code Ann. § 40-30-210(f) (1997). A post-conviction court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The court's application of the law to the facts, however, is reviewed *de novo*, without any presumption of correctness. Id. The issues of "deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact," and, therefore, are reviewed *de novo*. Id. (citing Goad v. State, 938 S.W.2d 363 (Tenn. 1996)).

## I. Ineffective Assistance of Counsel

The petitioner's first issue is whether the post-conviction court erred in finding that he received effective assistance of counsel at trial. Further, the petitioner argues that his trial counsel were ineffective for failing to "thoroughly investigate" his case. He asserts that his counsel failed to contact his family members or to request his school records, despite their concerns that he might be mentally deficient. The petitioner contends that had his counsel taken the appropriate steps to have him tested and to contact "key" defense witnesses, they would have discovered his history of mental evaluations and his mental limitations, and the outcome of his trial would have been different.

The State argues that the post-conviction court did not err in finding that the petitioner received effective assistance of counsel at trial. The State first notes that this court has previously determined that the petitioner's mental evaluation records were not material and would not have changed the outcome of his trial. Thus, the State asserts that even if petitioner's counsel were deficient for failing to discover the petitioner's mental records or his mental limitations, the petitioner's ineffective assistance of counsel claim must fail because he cannot show that counsel's deficient performance was prejudicial to the outcome of his trial. The State further argues that, given the petitioner's deliberate misrepresentation of his mental history to his counsel, and the lack of concrete evidence to indicate that he was mentally deficient, the petitioner's counsel were not deficient for failing to investigate his mental condition.

In order to establish a claim of ineffective assistance of counsel, the petitioner bears the burden of proving both that his counsel's performance was deficient, and that counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). The Strickland Court articulated the standard as a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court explained the meaning of "deficient performance" in the first prong of the test:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of

-6-

legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. Therefore, to show that his counsel's performance was deficient, the petitioner must establish that "the advice given or the service rendered was not within the range of competence demanded of attorneys in criminal cases[.]" Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). The petitioner has to show that counsel's "acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, and Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).

The Strickland Court cautions, however, that counsel's acts or omissions must be evaluated from counsel's perspective at the time, without benefit of the "distorting effects of hindsight." 466 U.S. at 689, 104 S. Ct. at 2065. The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

To satisfy the prejudice prong of the test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697, 104 S. Ct. at 2069; see also Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim"). If the petitioner fails to meet either prong of the test, his claim of ineffective assistance of counsel must fail.

The record in this case shows that when the petitioner's counsel began to suspect that the petitioner might be "slow," they directly asked him if he had ever been in any special education classes or received any mental evaluations or treatment. The petitioner denied that he had, deliberately misleading his counsel about the existence of the mental records. As the following exchange between senior trial counsel and the petitioner's post-conviction counsel makes clear, it was only in hindsight, after trial counsel learned of the petitioner's mental evaluation reports, that they recognized that the petitioner might have had some difficulty in understanding them due to his mental limitations:

> Q. And I guess what I was groping around for when I was asking that question a few minutes ago, did his reactions or his assessments of what you were telling about his case ever seem

childlike to you, or did he seem to have an adult attitude towards it? And I don't know . . .

A.  Okay, well, just to clarify. Those are facts that, I know you know this but just for the record, that we discovered after the trial.

Q.  Yes.

A.  Which is why we had filed that motion [for a new trial]. In retrospect, when we got those records, I think [junior trial counsel] and I both told each other, this all makes sense now. It all sort of clicked.

Q.  Right.

A.  I don't think we ever said beforehand, oh, he's acting childish, or he's behaving like he has the mental age of a six year old or an eight year old, specifically. We thought that there were – we had some concerns. So, I mean, I don't know how to answer that other than . . .

When later asked why she had not pursued the option of having the petitioner evaluated, senior trial counsel replied:

In here I put, and I would have told the truth, that I didn't have any concrete grounds to suspect a problem so I didn't believe I would be entitled to an ex parte request for funds. And that's probably true. I mean, I'm sure it was true when I wrote it.

But I would not normally ask the Court for funds unless I had something to base those funds on. And all we had was sort of a suspicion that he was either slow, or that he just didn't want to believe what had happened, or that his story didn't make sense. And I wish I had, but I didn't.

The reasonableness of senior trial counsel's decision not to pursue mental testing, or to further investigate whether her client had ever been mentally evaluated, cannot be judged with the benefit of hindsight, after the mental evaluation evidence was brought to light, but instead must be judged from her perspective at the time, when all she had to go on was "sort of a suspicion" that he might be "either slow, or that he just didn't want to believe what had happened." Her decision must also be judged in light of the information she received from her client. A trial counsel's decision to pursue a particular line of defense "may be determined or substantially influenced by the

-8-

defendant's own statements or actions." Henley v. State, 960 S.W.2d 572, 583 (Tenn. 1997) (quoting Strickland, 466 U.S. at 691, 104 S. Ct. at 2066). Thus, as the Strickland Court explained, "inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." 466 U.S. at 691, 104 S. Ct. at 2066. In this case, the petitioner told his counsel, in response to direct questioning, that he had never been in special education and had never had any sort of mental assessments performed. Counsel had vague suspicions that the petitioner might be "a little bit slow," but they also suspected that he simply did not want to understand and was deliberately focusing on issues that were unimportant. Under these circumstances, counsel's failure to investigate and discover the petitioner's mental evaluation records does not constitute a deficiency in representation.

Furthermore, we agree with the State that even if the petitioner's counsel were deficient for failing to investigate and discover his mental records, that failure did not prejudice his defense. As the State has pointed out, this court has previously determined, on review of the trial court's denial of the petitioner's motion for a new trial, that the mental evaluation evidence was not material and would not have affected the outcome of the trial. See State v. David Palmer, No. 01C01-9607-CR-00285, 1997 WL 722789, at *10 (Tenn. Crim. App. Nov. 20, 1997), perm. app. denied (Tenn. Sept. 21, 1998). We find no merit in the petitioner's argument that the mental records, in which the petitioner was described, at the age of fourteen, as a child who exhibited "bad judgment" and had a "tendency to act without thinking," would have altered the outcome of the trial, considering that the petitioner was an adult of twenty, rather than a child of fourteen, at the time the crime was committed.

In sum, we conclude that the petitioner has failed to satisfy his burden of showing that his counsel were deficient for failing to discover the mental evaluation evidence, or that their failure to do so prejudiced the outcome of the trial. The petitioner is not entitled to post-conviction relief on this issue.

## II. Petitioner's Presence During Voir Dire of Jury

In his post-conviction petition, and at the post-conviction hearing, the petitioner argued that his due process rights were violated because he was not allowed to be present during voir dire of the jury. Senior trial counsel, however, testified that, contrary to the petitioner's assertions, he was present, and that he sat between her and junior trial counsel. Her testimony is corroborated by the transcript of the petitioner's trial, which reveals that the petitioner was present with his attorneys when twenty-eight potential jurors were brought in for voir dire. In recognition of this fact, the petitioner makes no argument on this issue on appeal. This issue, therefore, is without merit.

## III. Petitioner's Right to Testify

Finally, the petitioner argues that he was denied his constitutional right to testify at trial. He asserts that his attorneys induced him to give up his right to testify by misrepresenting to him that

his prior conviction for statutory rape could be used against him if he took the stand, and this amounted to a denial of his right to testify. He contends that, were it not for his "misunderstanding of the facts, as represented by his attorneys," he would not have waived his right to testify. The State argues that the record does not support the petitioner's allegation and that the evidence does not preponderate against the post-conviction court's finding that the petitioner voluntarily gave up the right to testify, based on the advice of competent counsel. We agree.

At the post-conviction hearing, senior trial counsel testified that, prior to the trial, the court had ruled following a hearing that, if the petitioner testified, he could not be asked about his prior conviction for statutory rape, because it was not a crime involving dishonesty. That was the petitioner's only conviction as an adult. Senior trial counsel also testified that she and junior trial counsel strongly urged the petitioner not to testify because they did not find his account of the incident to be believable. She said that after advising him against taking the stand, they told the petitioner that it "was a decision that only he could make," and that it had been his decision not to testify. In finding that the petitioner had not been denied the right to testify, the post-conviction court accredited the testimony of senior trial counsel, obviously finding it more credible than that of the petitioner. The evidence does not preponderate against the post-conviction court's finding. Consequently, the petitioner is not entitled to relief on this issue.

## CONCLUSION

After reviewing the record, we conclude that the petitioner has failed to establish that he received ineffective assistance of counsel, that voir dire was conducted outside his presence, or that he was denied the right to testify. Accordingly, the judgment of the post-conviction court is affirmed.

_____
ALAN E. GLENN, JUDGE

-10-